FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 09, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANNE T., | No. 1:17-CV-3120-FVS |
| Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 12, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 16. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney D. James Tree. Defendant was represented by Special Assistant United States Attorney Christopher J. Brackett. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 12, is granted and Defendant's Motion, ECF No. 16, is denied.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## JURISDICTION

Plaintiff Anne T. ("Plaintiff") filed for disability income benefits (DIB) on June 12, 2013, alleging an onset date of June 30, 2012. Tr. 202-03, 241. Benefits were denied initially, Tr. 124-26, and upon reconsideration, Tr. 132-34. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 25, 2015. Tr. 47-88. On March 28, 2016, the ALJ denied Plaintiff's claim, Tr. 21-36, and on May 10, 2017, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 45 years old at the time of the hearing. Tr. 52. She has an associate of arts degree and was a certified medical assistant. Tr. 52. She last worked in December 2012 as an on-call medical assistant. Tr. 53-54. She also has work experience as a stage technician for a theater and as a telephone operator. Tr. 54-55. She was previously honorably discharged from the Navy as a store keeper third class. Tr. 58, 71.

Plaintiff testified she is not able to work because she is in a lot of pain "24/7." Tr. 64. She has fibromyalgia and her pain has steadily gotten worse. Tr. 64, 67-68. She has pain and swelling in her joints. Tr. 68. Activity such as

participating in the hearing will cause her to go home and go to bed for the rest of the day. Tr. 69. She takes morphine for pain and another medication for breakthrough pain. Tr. 69. She also has interstitial cystitis which causes cramping and pain throughout the day and burning when she uses the bathroom. Tr. 69. The pain is crippling and there is not much she can do to treat it, other than lie down and use a heating pad which helps a little. Tr. 69. She gets extremely fatigued and needs to lie down frequently. Tr. 71.

Plaintiff testified she has depression. Tr. 70. She is unable to do anything with her children, she is "unable to keep a life," and, "I'm not living the way I'm going right now." Tr. 70. She testified she lived an active life until around 2012, working 10-14 hours days five days a week. Tr. 70. She used to volunteer at her children's schools and at a weekend medical clinic. Tr. 70-71. Sometimes she also worked at the theater on weekends. Tr. 71. Plaintiff testified that her life "is so frustrating right now that I want to scream." Tr. 72.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 30, 2012, the alleged onset date. Tr. 23. At step two, the ALJ found Plaintiff has the following severe impairments: obesity, fibromyalgia, interstitial cystitis, knee degenerative joint disease, hip osteoarthritis/degenerative joint disease, Raynaud's disease, affective disorder, anxiety disorder versus posttraumatic stress disorder (PTSD), and somatoform/pain disorder. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 24. The ALJ then found Plaintiff has the residual functional capacity to perform a reduced range of light work with the following additional limitations:

> She can stand and/or walk for about two hours in an eight-hour workday and she can use a medically required hand held assistive device for ambulation. She can frequently reach. She can occasionally balance, stoop, kneel, and crouch. She cannot crawl or climb ladders, ropes, scaffolds, ramps, or stairs. She must avoid concentrated exposure to extreme cold and heat, humidity, vibration, pulmonary irritants, and hazards. She cannot be required to operate motorized vehicles. She can work in very quiet to moderate noise intensity level as those terms are defined in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). She can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and she can perform simple duties that can be learned on the job in a short period. She requires a work environment with minimal supervisor contact (minimal does not preclude all contact, rather it means that contact does not occur regularly. Minimal contact also does not preclude simple and superficial exchanges or being in proximity to the supervisor). She can work in proximity to coworkers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with coworkers. She requires a work environment that is predictable and with few work setting changes. She requires a work environment without public contact.

Tr. 26.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 35. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as patcher/bench assembler, final inspector, or circuit board assembler. Tr. 35-36. Therefore, at step five, the ALJ concluded that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Plaintiff has not been under a disability, as defined in the Social Security Act, from June 30, 2012, through the date of the decision.  Tr. 36.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 15. Plaintiff raises the following issues for review:

1. Whether the ALJ failed to properly consider the Veteran's Administration disability rating;

2. Whether the ALJ failed to properly consider the medical opinion evidence;

3. Whether the ALJ improperly discredited Plaintiff's symptom claims; and

4. Whether the ALJ properly considered the lay witness statement.

ECF No. 12 at 1.

## DISCUSSION

**A.    Veteran's Administration Disability Rating**

Plaintiff contends the ALJ failed to properly consider the Veteran's Administration (VA) disability rating finding that Plaintiff is 50% disabled.  ECF No. 12 at 12-14.  An ALJ must ordinarily give great weight to a VA determination of disability because of the "marked similarity between these two [the VA and

SSA] federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076

(9th Cir. 2002).

> Both programs serve the same governmental purpose—providing benefits to those unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims. Both programs have a detailed regulatory scheme that promotes consistency in adjudication of claims. Both are administered by the federal government, and they share a common incentive to weed out meritless claims. The VA criteria for evaluating disability are very specific and translate easily into SSA's disability framework.

*Id.* However, "[b]ecause the VA and SSA criteria for determining disability are not identical, [] the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* An ALJ is not compelled to adopt the conclusions of the VA's decisions wholesale, but if an ALJ deviates from final VA decisions, the deviation must be based on contrary evidence that is persuasive, specific, and valid, and supported by the record. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (internal quotation omitted).

In June 2013, the VA revised Plaintiff's disability rating from 40% to 50% for degenerative arthritis, status post medial meniscectomy in the left knee; right hip strain; and tear of left iliofemoral ligament with degenerative joint disease. Tr. 221-33. The ALJ gave little weight to the numeric disability rating assessed by the VA. Tr. 33-34.

First, the ALJ rejected the VA disability ratings because "the VA has not opined that the claimant was unemployable in these rating decisions." Tr. 34. The meaning of this statement is unclear. One interpretation is that the VA rating is equivalent to a determination that Plaintiff is employable. If that is what the ALJ intended, it follows that the ALJ would not need to reject the rating but would rather cite the rating as support for the ALJ's ultimate nondisability conclusion.[1] This interpretation is also at odds with the ALJ's second reason for rejecting the VA rating, which asserts that the rating is not based on an assessment of Plaintiff's ability to perform work in the national economy. Tr. 34. It is inconsistent to first suggest that the rating reflects a determination regarding employability, but then state the assessment is not based on an assessment of Plaintiff's ability to work.

Alternatively, if the meaning of the first reason for rejecting the VA rating is that VA ratings in general are not employability ratings, this reasoning would be based on the general ground that the VA and SSA disability inquiries are different,

_____

[1] It is noted that the VA 50% disability rating does not take into account all of Plaintiff's severe impairments such as fibromyalgia and interstitial cystitis, it only takes into account her service-related impairments involving her knee and hip. Tr. 24, 221-30.

and "[that] analysis fell afoul of *McCartey*."[2]  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).  Regardless, this is not a persuasive, valid, and specific reason based on contrary evidence.

Second, the ALJ rejected the VA disability ratings because "they did not provide an individualized assessment that focuses on a claimant's ability to perform work in the national economy."  Tr. 34.  This is just a different way of stating that the rules and findings of the VA and the SSA differ, which is not a valid consideration.  *See McCarty*, 298 F.3d at 1076; *see also Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018); *Hiler*, 687 F.3d at 1212; *Valentine*, 574 F.3d at 695.  The ALJ's finding is contrary to precedent and is therefore not valid or persuasive.

---

[2] The ALJ devoted several paragraphs to discussing the differences between the VA and Social Security disability programs and cites *McCartey* for the finding that "the two agencies have different criteria for determining disability."  Tr. 33-34 (quoting 298 F.3d at 1076).  To the extent that the ALJ intended to reject the VA disability rating on that basis generally, the ALJ's finding is erroneous under *McCartey*.

Defendant contends the ALJ cited additional reasons constituting persuasive, valid, and specific reasons for rejecting the VA rating. ECF No. 16 at 10. Specifically, Defendant asserts the ALJ "discounted [the VA] ratings for the same reason that applied to Dr. Rue's opinions." ECF No. 16 at 10 (citing Tr. 32-33). Indeed, the ALJ cited the longitudinal history, the objective clinical findings, and her performance on physical examinations "set forth above" as inconsistent with the VA rating "to the extent they reflect more severe restrictions." Tr. 32. As discussed *infra*, the ALJ's reasons for rejecting Dr. Rue's opinions are based at least in part on a selective reading and mischaracterization of the record of the record, and are therefore not legally sufficient reasons for rejecting the VA rating. Furthermore, even if the ALJ's reasoning was adequate to support rejecting Dr. Rue's opinions and the reasons could be considered "valid" reasons, there is no indication that the ALJ considered these reasons in evaluating the VA rating in a sufficiently specific or persuasive manner.

The ALJ gave no weight to the VA disability rating without citing persuasive, valid and specific reasons for doing so. The ALJ cited no evidence contrary to the rating; in fact, the ALJ indicated that "more weight" was given to the objective findings contained in VA treatment notes, which presumably form the basis of the rating. The ALJ's reasons for rejecting the VA rating are essentially variations on differences in rules between the VA and the Social Security Administration, which is not consistent with controlling case law in the

Ninth Circuit.  Thus, the ALJ did not properly consider the VA rating and the matter must be remanded for reconsideration.

**B.       Medical Opinion Evidence**

Plaintiff contends the ALJ improperly rejected the medical opinion of her treating physician, Katina Rue, D.O.  ECF No. 12 at 7-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

In January 2014, Dr. Rue completed a Medical Report form, noting she had been treating Plaintiff since 2011. Tr. 597. She listed diagnoses of polyarthralgia with abnormal ANA titer, fibromyalgia, chronic fatigue syndrome, and PTSD. Tr. 597. Dr. Rue noted Plaintiff's symptoms and signs of swollen joints and chronically elevated ANA titer. Tr. 597. She opined Plaintiff needs to lie down every day for hours at a time due to pain and exhaustion which is worse after any sort of activity or outing. Tr. 597. Plaintiff's medications caused or could cause narcolepsy, drowsiness, or poor reaction time. Tr. 597. Dr. Rue indicated that Plaintiff is unable to tolerate activity or pressure and physical or emotional stress worsens her daily functioning. Tr. 598. Dr. Rue opined Plaintiff would miss four or more days of work per month, likely even a week at a time. Tr. 598. She also assessed Plaintiff as severely limited, meaning unable to lift at least two pounds or unable to stand and/or walk. Tr. 598. Additionally, during an office visit on January 10, 2014, Dr. Rue opined, "I do not feel that she [is] in any condition to work." Tr. 602.

In July 2014, Dr. Rue completed a second Medical Report form. Tr. 682-83. She listed fibromyalgia and abnormal ANA as the diagnoses, noting abnormal exam and laboratory findings. Tr. 682. Dr. Rue indicated Plaintiff needs to lie down during the day for two to 16 hours due to pain and fatigue, and that she had been treated with physical therapy, opiate and nonopiate pain medications, and by referral to specialists. Tr. 682. She again indicated work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, and that she would miss work four or more days per month. Tr. 683. The ALJ gave little weight to Dr. Rue's opinions. Tr. 31-32.

Because Dr. Rue's opinions were contradicted by the opinion of Gordon Hale, M.D., a reviewing physician, Tr. 115-17, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Rue's opinions. *Bayliss*, 427 F.3d at 1216.

The ALJ rejected Dr. Rue's opinions because they "are inconsistent with the claimant's longitudinal history, the objective clinical findings, and her performance on physical examinations." Tr. 32. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A medical opinion may also be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th

Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The ALJ cited a number of treatment records which the ALJ found are inconsistent with Dr. Rue's opinion. Tr. 32-33. The ALJ noted records showing she has "consistently been neurologically intact with 5/5 strength throughout," and a 2015 office record indicating largely unremarkable review of systems with equal and adequate strength in the upper and lower extremities, and a smooth gait that was slightly unsteady with Romberg testing. Tr. 32 (citing Tr. 377-79, 588-90, 830-32). The ALJ also cited records indicating Plaintiff benefitted from medication and a left knee injection, and that she acknowledged her fibromyalgia was "well-controlled" in mid-2014. Tr. 33 (citing Tr. 402-04, 448, 604, 748-49, 926).

Plaintiff contends the ALJ's "overly selective version of the record mischaracterizes the record as a whole," and that the records cited by the ALJ do not contradict Dr. Rue's opinions. ECF No. 12 at 8. An ALJ should "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" Social Security Ruling (S.S.R.) 12-2. The Court agrees with Plaintiff that the ALJ selectively considered the record. For example, an office visit record from Dr. Rue dated May 2013 and cited by the ALJ mentions that a prednisone burst three months prior "helped significantly," which is part of the ALJ's basis for finding that Plaintiff

benefitted from medication.  Tr. 33, 402.  However, Dr. Rue indicated that despite

the prednisone burst, Plaintiff "continued to have hand swelling."  Tr. 402.

Plaintiff had also been maintained on prednisone but was still having swelling in

the "MCPs" (metacarpophalangeal joints).  Tr. 402.  Additionally, Plaintiff was

"crying at the drop of a hat" because she "just can't function the way she is."  Tr.

402.  She reported pain and was so fatigued that she could "sleep for an entire day

after she overdoes it."  Tr. 402.  This record actually supports Dr. Rue's opinions

rather than undermines it.

Similarly, the ALJ cited an August 2013 note by Dr. Rue that Plaintiff felt

the current morphine dose was "really making a difference for her pain level."  Tr.

604.  However, the ALJ failed to recognize that Plaintiff also reported that she had

not been "up and mobile" at the same time, which is actually consistent with Dr.

Rue's opinions that she needs to lie down frequently.  Tr. 597, 604, 682.

The ALJ also noted a September 2014 record indicating Plaintiff called her

treating provider to report that she was "moving things in the garage" and had

reinjured her left knee"  Tr. 834.  There are no other details provided.  The ALJ

found Plaintiff's report that she was "moving things in the garage" is inconsistent

with Dr. Rue's finding that Plaintiff is unable to lift two pounds or to stand/walk,

Tr. 598.  However, the inconsistency, if any, applies only Dr. Rue's January 2014

opinion and not the July 2014 opinion, because Dr. Rue did not opine about

Plaintiff's work level in July 2014.  Tr. 598.  It is also noted that "moving things in

the garage" resulted in Plaintiff reinjuring her knee, suggesting that she was not, in fact, capable of successfully engaging in that activity. Further, this one instance of an activity which is not explained or described in any detail is not sufficient to justify rejecting the opinion of a long-term treating physician.

While a few of the records cited by the ALJ may support the ALJ's conclusions, the unsupported findings discussed *supra* and elsewhere in this decision call into question the ALJ's interpretation of the evidence in general and the record overall. The ALJ should reconsider Dr. Rue's opinion as part of an overall reevaluation of the record on remand.

## C.    Plaintiff's Symptom Claims

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 12 at 14-18. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. Tr. 27.

First, the ALJ found the medical evidence does not substantiate the severity of Plaintiff's allegations of disabling limitations. Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ discussed portions of the medical record, but did not explain how Plaintiff's pain testimony is undermined by the objective evidence. Tr. 27-28. Even assuming the ALJ's conclusions suggesting the record does not support Plaintiff's complaints are based on substantial evidence, the lack of objective evidence cannot be the only reason supporting a finding regarding Plaintiff's symptom complaints. *See Burch*, 400 F.3d at 680. As discussed *infra*, the ALJ's other reasons for discounting Plaintiff's symptom complaints are not supported by

substantial evidence.  Because the lack of objective evidence cannot be the only basis for rejecting symptom complaints, this reason is insufficient.

Second, the ALJ found Plaintiff received unemployment benefits for a significant period of time during which she claims she was disabled.  Tr. 29. Receipt of unemployment benefits may cast doubt on a claim of disability, as it shows that an applicant holds herself out as capable of working.  *Ghanim*, 763 F.3d at 1165; *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988).  Notwithstanding, if the record does not establish whether the claimant held herself out as available for full-time or part-time work, receipt of unemployment benefits may not be inconsistent with disability allegations.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

The ALJ noted Plaintiff testified that every week she filed her unemployment claim and truthfully answered that she was physically able and available for work.  Tr. 31, 60.  The ALJ also observed Plaintiff did not submit a physician's certificate restricting her hours, functions, or potential occupations regarding her unemployment claim.  Tr. 30-31, 61.  Although the ALJ stated he was "not persuaded by her testimony that she could only do part-time work" and discussed the "part time eligible" provisions of state regulations regarding unemployment compensation, Tr. 30, the ALJ did not ask Plaintiff at the hearing whether she held herself out as available for full-time or part-time work, and there is no evidence to that effect in the record.

Additionally, when the ALJ asked about the conflict between Plaintiff's statements for unemployment that she was physically able to work concurrent with her disability claim in which she asserted she is totally disabled, Plaintiff responded, "I didn't have a choice." Tr. 64. She testified that, "we had no money coming in except for unemployment," and that she would have worked despite her pain if she had gotten a job because, "You have to do what you can to provide for your family[.]" Tr. 68. The record indicates that Plaintiff's certifications for unemployment benefits were a financial necessity rather than a reflection of her impression of her true capacity to work. Accordingly, and because the ALJ's inquiry about full-time or part-time work was insufficient, Plaintiff's receipt of unemployment benefits does not reasonably support the ALJ's decision to give less weight to Plaintiff's testimony.

Third, the ALJ found the record contains factual inconsistencies. Tr. 30. In evaluating a Plaintiff's symptom complaints, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. The ALJ found inconsistencies in numerous statements regarding Plaintiff's care for her family, pet care, driving, shopping, meal preparation, socializing, and general activities. Tr. 31 (citing 264-71, 306-14, 583). The purported inconsistencies involve

statements made in function reports completed by Plaintiff in August 2013 and March 2014, and at a psychological evaluation in October 2013, as well as at the hearing in September 2015.  Tr. 31, 61-63, 265, 267-68, 271, 308-11, 582-83.

Some of the ALJ's findings regarding inconsistencies involve activities that do not suggest greater capacity than alleged.  For example, in August 2013 Plaintiff indicated she cared for pets including two dogs, two fish, two guinea pigs, and a kitten; whereas by March 2014 Plaintiff reported her family takes care of the pets. Tr. 308.  In some cases, caring for pets such as horses or other larger or more demanding animals might reasonably suggest activity inconsistent with disability.  In this case, caring for a few household pets is not compelling evidence of nondisability.  And, although the ALJ cited Plaintiff's pet care to illustrate inconsistencies in Plaintiff's reporting, Plaintiff's report of reduced capabilities regarding activities such as shopping, cooking, socializing, and pet care in March 2014 or at the September 2015 hearing is entirely consistent with her claim that her condition declined over time.  Tr. 63-64, 68, 292.  These are not inconsistencies which reflect negatively on Plaintiff's symptom complaints.

The ALJ also made numerous findings about the physical processes and brain functions required to drive and concluded that Plaintiff's ability to drive indicates a level of functioning in excess of that alleged by Plaintiff.  Tr. 31.  The ALJ's statements are without basis in the record and some are even questionable, such as the assertion that driving requires social interaction.  Tr. 31.  Further, the

ALJ's failure to identify which of Plaintiff's allegations are inconsistent with the many functions required by driving and the general dismissal of Plaintiff's testimony on this basis is insufficient. *See Holohan*, 246 F.3d at 1208 (The ALJ "must specifically identify the testimony"found to be not credible and "must explain what evidence undermines the testimony." ).

Based on the foregoing, the ALJ's determination that Plaintiff's symptom complaints are less than fully credible is not legally sufficient. The matter must be remanded for reconsideration of Plaintiff's symptom complaints in addition to other errors and insufficiencies discussed throughout this decision.

**D.    Lay Witness**

Plaintiff contends the ALJ erroneously rejected the lay witness statement of Eric T., Plaintiff's husband. ECF No. 12 at 18-20. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

In March 2014, Plaintiff's husband completed a Function Report form indicating Plaintiff has difficulty standing, sitting, and walking and experiences

problems with vision, extreme fatigue, lifting, and balance. Tr. 298-305. He reported that Plaintiff spends most of the day lying down and frequently does not get up to eat or drink. Tr. 299. Plaintiff's husband noted some difficulties with personal care, such as difficulty with shoes and socks and pain in her shoulders when cleaning and grooming her hair. Tr. 299. He reported she does very little cooking and occasional chores but only for a few minutes at a time and maybe one time per month. Tr. 300. He estimated she gets a few groceries maybe once a week for about 20 minutes at a time. Tr. 301. She spends time with others about once a month watching movies, talking, or playing cards, but does not attend social events. Tr. 302-03. He indicated she has problems in almost every functional area and can lift five pounds maximum, walks only for extremely short distances, falls asleep during tasks, cannot stand for very long, and has lost dexterity in her hands. Tr. 303. She follows one-step directions well, but a large amount of information confuses her. Tr. 304. She cries and sleeps in response to too much stress. Tr. 304.

The ALJ found Plaintiff's husband's observations are similar to Plaintiff's complaints of mobility problems, fatigue, and poor vision, and gave little weight to the his statements for the same reasons given for rejecting Plaintiff's testimony regarding her symptoms: longitudinal treatment history, objective clinical findings, and her performance on physical and mental status exams; her collection of unemployment benefits; and factual inconsistencies in the record. Tr. 34. As

discussed *supra*, the ALJ's findings regarding Plaintiff's symptom complaints are legally insufficient.  Thus, the application of those findings to the statement of Plaintiff's husband is in question.  On remand, the ALJ should reconsider the lay witness statement.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  The ALJ did not properly consider Plaintiff's VA disability rating.  The ALJ's consideration of Plaintiff's symptom complaints and her husband's statement was insufficient.  Because of insufficiencies in the findings throughout the record, the ALJ's conclusions regarding Dr. Rue's opinion are also in question.  On remand, the ALJ should reconsider the evidence and conduct a new sequential evaluation, giving weight and consideration to the evidence as is appropriate.  The opinion of a medical expert may be helpful.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** October 9, 2018.

_Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge